J-S21020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA YANNUZZI | : | |
| | : | |
| Appellant | : | No. 167 EDA 2021 |

Appeal from the Judgment of Sentence Entered December 14, 2020
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0004273-2018

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 10, 2021**

Appellant, Joshua Yannuzzi, appeals from the December 14, 2020 judgment of sentence imposing three to twenty-three months' incarceration to be followed by ten years' consecutive probation after Appellant pleaded guilty to one count each of obscene and other sexual materials and performances (a first-degree misdemeanor) and invasion of privacy (a second-degree misdemeanor), as well as three counts of interception, disclosure or use of wire, electronic or oral communications (a third-degree felony).[1]   Prior to his sentencing, the trial court designated Appellant a sexually violent predator ("SVP") pursuant to Pennsylvania's Sexual Offender

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 5903(a)(1), 7507.1(a)(1), and 5703(1), respectively.

Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799-10 to 9799.41. We affirm.

The trial court summarized the procedural history as follows:

On August 28, 2019[, Appellant] tendered an open guilty plea to [the aforementioned crimes. Appellant's] conviction of invasion of privacy [] is a Tier I sexual offense under SORNA, with a prescribed registration period of fifteen [] years. *See* 42 Pa.C.S.A. §§ 9799.14(b)(10)[; *see also*] 9799.15(a)(1).

The written guilty plea colloquy summarized the facts as follows: "On [October] 10, 2018[, Appellant] surreptitiously recorded victims in a private bathroom [without] their knowledge. [These video recordings] occurred in West Chester[,] Chester County[, Pennsylvania]." The verbal guilty plea colloquy presented the factual predicate [in] greater detail [as follows:]

[] On October 10, 2018[,] victim number 1 reported that she found a [cellular telephone] underneath the sink [that was] recording video footage in a gender[-]neutral bathroom [in a building] on the campus of [the local university].

This is a single[-]use[r] bathroom with no stalls. Victim number 1 noted that there was no one [in] the bathroom besides her when she was using it. The [cellular telephone] was pointed at the toilet and had tape covering the flash part of the [telephone]. Victim number 1 noted that upon retrieval[,] she double clicked on the [telephone's] home button [] and noticed that the [telephone] appeared to be recording video footage *via* a mobile application.

Forensic examination of the cellular [telephone] resulted in the following notable discoveries: More than ten stored user accounts and/or email addresses reflected in the device were owned and used by [Appellant,] including a [university-issued] email address associated with [Appellant]. Numerous still images and video files depicting [Appellant] handling the device were also recovered.

Numerous user[-]generated video recordings depict[ing] in excess of 90 individuals using at least ten unique bathrooms were recovered. Included in this total [were] at least 45

videos depicting individuals using gender[-]neutral bathrooms [at the local university], including the video depicting [victim number 1] using the bathroom on the date of the discovery.

The beginning of that particular video recording shows [Appellant] placing the recovered [] cellular telephone underneath the sink in the gender[-]neutral bathroom and position[ing] it in a manner where he could surreptitiously record any activity or use of the toilet area. [At] the conclusion of the video[,] the [reporting] victim was observed finding the [cellular telephone] under the sink. The video [] shows victim number 1 using the bathroom in a state of undress.

The forensic search also revealed a mobile [application] installed [on the cellular telephone] called the spy camera. The application was used in excess of 100 times between September 17, 2018[,] and October 10, 2018. The application is designed to secretly capture [photographs] and video by hiding the camera interface while in use.

[Appellant] was arrested and confessed to his crimes. During his confession[, Appellant] admitted to the following:

> [H]e placed the [cellular telephone] under the sink using [reinforced adhesive tape]. He secretly recorded [victims] in the gender[-]neutral bathroom on [the university] campus 30 to 50 times. [H]e recorded individuals in other bathrooms. [H]e recorded those individuals in order to capture them using the bathroom without their knowledge or consent.

> [H]e recorded these individuals for the purposes of sexual gratification. [H]e recorded these individuals in order to masturbate to the videos at a later time. He never received consent from any of the women to visually or audibly record them. [H]e uploaded one video to [a website]. The video captured a female using the bathroom without her knowledge or consent. He provided his [username] and password [to access the website].

The video was uploaded on July 11, 2017. It was viewed 1,097 times as of the date of the interview. He [] uploaded the video in order for others to access and view the video.

He [] identified victims that he secretly video recorded from the following locations: [a theatre] in Berwyn, Pennsylvania; a home in Philadelphia[, Pennsylvania]; a beach house in [Rehoboth] Beach, Delaware; a residence in West Chester, Pennsylvania; [a theatre] at [the university; and] a residence in Reading, Pennsylvania.

In total[,] the Commonwealth identified 25 victims who [Appellant] secretly recorded. In all [] the recordings[,] the victims were in some stage of nudity [or] undress and using the bathroom. None of them had given consent or allowance for those recordings.

At the time of the plea, [Appellant] was a twenty-five [] year-old male with an associate's degree in communications from [a community college].

The [trial] court accepted [Appellant's] plea. [Appellant] signed a plea colloquy acknowledgement of his sex offender registration and notification requirements, including the mandate that he undergo a SVP assessment and the ramifications of a designation as such. On February 12, 2020, the [trial] court ordered a pre-sentence investigative report and a Sexual Offenders Assessment Board evaluation.

The pre-sentence investigative report was completed on April 1, 2020. The Sexual Offenders Assessment Board evaluation and report, conducted and prepared by Dr. Bruce E. Mapes, Ph.D. [("Dr. Mapes")[2]], was completed on [] May 8, 2020. [Appellant] did not participate in that assessment. Instead, [Appellant]

_____

[2] As a member of the Sexual Offenders Assessment Board, Dr. Mapes is qualified as an expert in the field of the behavior and treatment of sexual offenders. 42 Pa.C.S.A. § 9799.35 (stating, "[t]he [Sexual Offenders Assessment Board] shall be composed of psychiatrists, psychologists[,] and criminal justice experts, each of whom is an expert in the field of the behavior and treatment of sexual offenders").

retained his own expert, Dr. Frank M. Dattilio, Ph.D., ABPP [("Dr. Dattilio")], to perform a psychological evaluation and sexual risk assessment on [Appellant's] behalf, in which [Appellant] did participate. Dr. Mapes determined that [Appellant] met the criteria to be designated [a SVP]. Dr. Dattilio, who completed his expert report on November 19, 2020, did not [find Appellant met the criteria to be designated a SVP].

On December 14, 2020, [the trial court] convened for [Appellant's] SVP hearing and sentencing. With regard to the question of [Appellant's] status as [a] SVP, the parties agreed to submit their respective expert reports *in lieu* of testimony. After reviewing both reports and hearing the arguments of counsel, [the trial court] determined that [Appellant] met the criteria for designation as [a] SVP and issued an order to that effect, directing him to comply with SORNA's lifetime registration and notification provisions. [Appellant] also signed a sentencing colloquy acknowledgment of his obligations under SORNA.

After determining that [Appellant] met the criteria to be designated as a [SVP, the trial court] turned to [sentencing Appellant] for the offenses to which he [pleaded guilty]. On the conviction for invasion of privacy[, the trial court] sentenced [Appellant] to a term of three [] to twenty-three [] months' imprisonment in Chester County Prison. On the conviction for obscene and other sexual materials and performances[, the trial court] sentenced [Appellant] to a term of two years' probation, to run consecutive[ly] to the sentence imposed [for the invasion of privacy conviction]. On [the first count] for interception, disclosure or use of wire, electronic or oral communications[, the trial court] sentenced [Appellant] to [a] term of five [] years' probation, to run consecutive[ly] to the sentence imposed [for the invasion of privacy conviction]. On [the second count for] interception, disclosure or use of wire, electronic or oral communications[, the trial court] sentenced [Appellant] to a term of three [] years['] probation to run consecutively to the sentence imposed on [the first count of interception, disclosure or use of wire, electronic or oral communications]. Finally, on [the third count for interception, disclosure or use of wire, electronic or oral communications, the trial court] sentenced [Appellant] to a term of one [] year of probation, to run concurrent[ly] to the sentence imposed [for the invasion of privacy conviction]. Thus, [Appellant's] aggregate sentence is three [] to twenty-three months[' incarceration] followed by ten [] years of consecutive

probation. [The trial court] also made [Appellant] re-entry plan eligible at the warden's discretion.

Trial Court Opinion, 3/22/21, at 1-6 (extraneous capitalization, record citations, and original brackets omitted).

Appellant raises the following issue for our review: "Did the trial court err when it designated [Appellant] as a [SVP]?" Appellant's Brief at 4.

Appellant's objection to the trial court's SVP determination raises a challenge to the sufficiency of the evidence; thus, our standard of review is *de novo* and our scope of review is plenary.[3] ***Commonwealth v. Meals***, 912 A.2d 213, 218 (Pa. 2006).

> The determination of a defendant's SVP status may only be made following an assessment by the [Sexual Offenders Assessment] Board and [a] hearing before the trial court. In order to affirm [a] SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a sexually violent predator. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth[, as the prevailing party on this issue]. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

---

[3] Although Appellant did not specify the element or elements of the statute he was challenging in his sufficiency claim, a review of Appellant's brief demonstrates that he is challenging the sufficiency of the evidence to prove that he was in a "relationship" with the victims in order to establish that he is likely to engage in future predatory sexually violent offences. Appellant's Brief at 7-9. As discussed *infra*, proof that a defendant was in a "relationship" with the victim of the underlying sexually violent offense is not a necessary element to designate the defendant a SVP.

*Commonwealth v. Fuentes*, 991 A.2d 935, 941-942 (Pa. Super. 2010) (*en banc*) (citation omitted), *appeal denied*, 12 A.3d 370 (Pa. 2010). The clear and convincing standard governing a determination of SVP status "requires evidence that is so clear, direct, weighty, and convincing as to enable the trier[-]of[-]fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Meals*, 912 A.2d at 219 (citation, original quotation marks, and original brackets omitted).

Section 9799.12 of SORNA defines the term "sexually violent predator" as,

> [a]n individual who committed a sexually violent offense on or after December 20, 2012, for which the individual was convicted, [] who is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9799.12; *see also Commonwealth v. Butler*, 226 A.3d 972, 992 (Pa. 2020) (stating, a SVP, in addition to having been convicted of a sexually violent offense, is a person "who [has] been individually determined to suffer from a mental abnormality or personality disorder such that they are highly likely to continue to commit sexually violent offenses"). A "sexually violent offense" is defined by SORNA as "[a]n offense specified in section 9799.14 (relating to sexual offenses and tier system) as a Tier I, Tier II[,] or Tier III sexual offense committed on or after December 20, 2012, for which

the individual was convicted."[4]   42 Pa.C.S.A. § 9799.12.   "Predatory" is defined by SORNA as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

Under Section 9799.24 of SORNA, after a defendant is convicted of a sexually violent offense but before sentencing, the trial court shall order the Sexual Offenders Assessment Board to conduct an "assessment of the individual to determine if the individual should be classified as a [SVP.]"  42 Pa.C.S.A. § 9799.24(a) and (b).   In performing its assessment, the Sexual Offenders Assessment Board examines, *inter alia* the following:

(1)   Facts of the current offense, including:

(i)   Whether the offense involved multiple victims.

(ii)   Whether the individual exceeded the means necessary to achieve the offense.

(iii)   The nature of the sexual contact with the victim.

(iv)   Relationship of the individual to the victim.[5]

(v)   Age of the victim.

---

[4] Appellant's conviction for invasion of privacy, 18 Pa.C.S.A § 7501.1, is a designated Tier I sexually violent offense under Section 9799.14.   **See** 42 Pa.C.S.A. § 9799.14(b)(10).

[5] Although the Sexual Offenders Assessment Board must consider all the prescribed factors enumerated in Section 9799.24, including, *inter alia*, a defendant's relationship with the victim, there is no statutory requirement that all factors must be present in order to designate the defendant as a SVP. **Commonwealth v. Feucht**, 955 A.2d 377, 381 (Pa. Super. 2008).

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24(b)(1-4).

Here, Appellant concedes that he suffered from a mental abnormality, specifically, voyeuristic disorder. Appellant's Brief at 7, **see also**, N.T., 12/14/20, at 17. Appellant further stated that he "set up a camera in a public bathroom that captured images of any and all who entered its frame." Appellant's Brief at 8. Appellant contends, however, that, in order to prove his disorder will likely cause him to engage in future predatory sexually violent offenses, the Commonwealth was required to prove by clear and convincing

evidence that he had a "relationship" with the victims of his instant convictions. *Id.* Within the context of the term "predatory" under SORNA, Appellant contends,

> Under rules of statutory construction, the plain meaning of "directing an act toward" and "having a relationship with"' someone is not present in the situation at bar. Specifically, [Appellant] set up a camera in a public bathroom that captured images of any and all who entered its frame. [Appellant] did not direct any act toward any specific stranger or target[,] and he definitely didn't establish relationships with anyone who was recorded in the bathroom.

*Id.* at 7-8. Appellant asserts that "if the act of victimizing someone in and of itself[, without proving that a defendant was in a relationship with the victim,] qualifies as predatory, then everyone who commits a sexually violent offense should be [a] SVP and the word 'predatory' would be redundant[.]" *Id.* at 8.

In so arguing, Appellant raises, in part, an issue involving the interpretation of a statute, specifically the definition of "predatory" under Section 9799.12 of SORNA, for which our scope of review is plenary, and our standard of review is *de novo*. ***Commonwealth v. Satterfield***, 255 A.3d 438, 442 (Pa. 2021). When interpreting a statute, an appellate court strives to ascertain and effectuate the intent of the legislature in enacting the statute. ***Commonwealth v. Smith***, 234 A.3d 576, 585 (Pa. 2020); ***see also*** 1 Pa.C.S.A. § 1921(a) (stating, "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.").

- 10 -

To reiterate, Section 9799.12 of SORNA defines "predatory" as "[a]n act directed at a stranger **or** at a person with whom a relationship has been initiated, established, maintained[,] or promoted, in whole or in part, in order to facilitate or support victimization."   42 Pa.C.S.A. § 9799.12; **see also Feucht**, 955 A.2d at 381 (stating, "[a] sexually violent offense is a predatory one if it is directed at a stranger or at a person with whom a relationship has been initiated, established, maintained[,] or promoted, in whole or in part, in order to facilitate or support victimization" (citation and original quotation marks omitted)), *appeal denied*, 963 A.2d 467 (Pa. 2008).

> In order for a person to be designated [a] SVP, the crime committed in the case under consideration need not have been predatory, although it must have been a sexually violent [offense].   Rather, what is required is that the person's mental abnormality[6] makes the person likely to engage in predatory behavior, whether or not the offense at issue was predatory. Naturally, the facts of the instant offense are material to the SVP assessment.   However, there simply is no requirement that the charge under consideration be a predatory offense.

**Feucht**, 955 A.2d at 381 (citations omitted).

A plain-reading of the definition of "predatory" demonstrates that for a sexually violent offense to be predatory, the act (or offense) must be directed at a stranger **or** at a person with whom a defendant develops a new

---

6 A mental abnormality is "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." 42 Pa.C.S.A. § 9799.12.

relationship, or already has an established relationship with, and fosters or promotes that relationship for purpose of victimizing the person. The use of the word "or" denotes that the act can be directed at a stranger **or** a person with whom the defendant has a relationship. Therefore, the Commonwealth is required to demonstrate by clear and convincing evidence that a defendant, due to a mental abnormality, is likely to commit future sexually violent offenses directed at a stranger **or** a person with whom the defendant has a relationship. The Commonwealth is not required to demonstrate that the underlying sexually violent offense was predatory by demonstrating that a defendant was in a relationship with the victim, as suggested by Appellant.[7] *See Feucht*, 955 A.2d at 381

In determining there was sufficient evidence to demonstrate that Appellant's mental abnormality was likely to cause him to commit future predatory sexually violent offices, the trial court stated,

> the Commonwealth has met its burden of proving by clear and convincing evidence that [Appellant] meets the criteria to be designated [a] SVP. [Appellant] is a life-long voyeur. He has

---

[7] Appellant's brief fails to cite to any case law that is contrary to this Court's holding in **Feucht**, **supra**, or that supports his contention that the Commonwealth must prove that the sexually violent offense (invasion of privacy in the case *sub judice*) was predatory in order to find that he is likely to commit future predatory sexually violent offenses as a result of a mental abnormality. **See** Pa.R.A.P. 2119(a) (stating that the argument section of an appellate brief shall include discussion of each issue with citation of authorities). We are unpersuaded by Appellant's argument and have found no case law or statute in support of his argument. **See Feucht**, 955 A.2d at 381 (stating, "there is simply no requirement that the charge under consideration be a predatory offense").

been photographing women without their knowledge and consent for his own sexual gratification since he was thirteen years old. Initially, he took video footage of women's body parts while they were clothed. Over the years[,] it escalated into surreptitious video-recording of women in various states of undress using public or private bathrooms without stalls, where women could not avoid the prying scope of [Appellant's recording] device. He even uploaded a picture of one of his victims onto the Internet where the footage was viewed 1,097 times. [Appellant] expanded his criminal voyeurism into two [] other states[,] as well as other counties in Pennsylvania. His victims[, in the instant case,] number more than ninety [] persons, some of them friends. Even after being apprehended, [Appellant] socialized with his unwitting victims as if nothing had happened. [Appellant] has multiple sexually deviant paraphilias, all related to the types of activities he [records] in the bathrooms. He knew it was wrong, knew he was invading others' privacy, and knew he was taking great risks himself, but blamed his behavior on his "addiction" to pornography and rationalized it to himself as lesser than it was because it did not involve physical contact. [Appellant's] diagnosis of voyeuristic disorder is a lifelong condition and qualifies as a mental abnormality [or] personality disorder for SVP purposes. The length of time he has had this condition, its pervasiveness, the presence of his other sexually deviant paraphilias, his sexual exploitation of more than ninety [] people, strangers as well as friends, his admission that his disorder overrides his ability or willingness to control his behavior, his efforts to conceal his activities, his persistence even though he knew his behavior was legally wrong, injurious to others, and risky for himself, and his plea to a predicate sexually violent offense all demonstrate clearly and convincingly that [Appellant] is [a] SVP, *i.e.*, a person convicted of a sexually violent offense who has a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses. 42 Pa.C.S.A. § 9799.12.

Trial Court Opinion, 3/22/21, at 37-39 (extraneous capitalization omitted).

A review of the record demonstrates that both the Commonwealth and

Appellant concede that he was convicted of a sexually violent offense, *i.e.*,

invasion of privacy, and that he suffers from voyeuristic disorder.[8]  Although Appellant did not participate in Dr. Mapes's assessment to determine if Appellant was a SVP, Dr. Mapes noted that Appellant "reported being sexually aroused" by several types of paraphilia that were "considered deviant sexual interests."[9]  Commonwealth Exhibit C-1 at 4.  Dr. Mapes stated that Appellant's voyeuristic disorder was "considered a lifelong disorder which can be treated but not cured, and the manifestation of which may wax and wane across [his] lifetime."  *Id.* at 5.  In providing his professional opinion within a reasonable degree of professional certainty, Dr. Mapes stated that Appellant was likely to commit future sexually violent offenses against strangers and persons with whom Appellant had some degree of a relationship because

_____

[8] Dr. Mapes classified Appellant as a "video voyeur," which he defined as a person who "set[s] up complicated equipment in bathrooms, bedrooms, or other intimate places to see [] victims naked[,] disrobing[,] or [engaging in] intercourse." Commonwealth Exhibit C-1 at 5.  Dr. Mapes explained that video voyeurs "take more risks" than pseudovoyeurs, opportunistic voyeurs, or computer voyeurs because video voyeurs "may actually visit the homes of the victims." *Id.*

[9] Dr. Mapes defined "paraphilia" as a "sexual interest which may reflect 'normal' sexual interests or 'deviant' sexual interests." Commonwealth Exhibit C-1 at 4.  Dr. Mapes stated Appellant reported he was sexually aroused by coprophilia (arousal to feces), coproscopist (arousal from observing someone defecating), eprectolagnia (arousal to flatulence), and urophilia (arousal to urine). *Id.*  Dr. Dattilio reported Appellant's interest in these paraphiliae but noted that Appellant stated he found them "cynically humorous but not sexually arousing [] to the same degree that he found unobtrusively observing or videoing women undressing or using the toilet." Defense Exhibit D-1 at 11.  Dr. Dattilio opined that Appellant's interests were not "deviant sexual interests involving arousal" and did not "rise to the level of a paraphilic disorder." *Id.*

[o]ne who suffers from voyeuristic disorder, [one] who has multiple deviant sexual interests, one who has over 90 [prior] victims, and one who has engaged in voyeurism for at least six months[, as is the case with Appellant,] is considered more likely to reoffend than one who does not suffer from this disorder.

*Id.* (extraneous capitalization omitted).

Dr. Dattilo, upon conducting an evaluation of Appellant, in which Appellant participated, stated that, "[w]hile [Appellant] is considered in some ways 'more likely to reoffend than one who does not suffer from [voyeuristic] disorder,' with treatment, this condition has significantly reduced in [Appellant's] case."[10]  Defense Exhibit D-1 at 18.  In assessing whether Appellant's voyeuristic disorder was likely to cause Appellant to engage in future predatory sexually violent offenses, Dr. Dattilo questioned whether "the diagnosis of voyeurism meets the statutory criteria of a 'violent' sexual offense or as increasing the risk to engage in 'violent sexual offenses'" because voyeurism is a noncontact offense.  *Id.* at 18-19.  Dr. Dattilo stated,

I [] respectfully disagree with Dr. Mapes that [Appellant] meets the criteria for predatory behavior in the respect that it would qualify him to be a [SVP.]  While [Appellant] clearly engaged in

---

[10] Dr. Dattilo stated,

Voyeuristic disorder can be a lifetime disorder depending on the degree and intensity as well [as] its response to treatment.  In cases in which individuals do not invest in treatment or receive inadequate treatment, the manifestation can wax and wane across the lifespan but [is] likely not to do so when a strong commitment to treatment and rehabilitation is made and they receive intensive intervention that is effective.

Defense Exhibit D-1 at 18.

predatory behavior, the conditions of his actions require perspective that because of [Appellant's] autism,[11] he is prone to objectify the victim, separating this from any intended violent act. Therefore, the likelihood of determination that it is irreversibly repetitive depends on his response to treatment.

*Id.* at 19. Dr. Dattilio opined, "to a reasonable degree of psychological certainty[,]" that Appellant was "a low risk to reoffend, particularly due to the fact that he has been involved in intensive treatment and has made excellent progress." *Id.* at 21.

Viewing the evidence in the light most favorable to the Commonwealth, as the prevailing party, we concur with the trial court that there was sufficient clear and convincing evidence to designate Appellant as a SVP. Appellant was convicted of a sexually violent offense as defined by SORNA, namely invasion of privacy. Both experts agreed that Appellant suffered from voyeuristic disorder, which is a lifelong condition that can "wax and wane" depending upon a person's level of and response to treatment but that cannot be cured.[12] Moreover, both experts noted that Appellant's voyeuristic disorder led to his predatory acts of recording 90 victims in spaces in which the victims had an

---

[11] Dr. Dattilo diagnosed Appellant as suffering from an autism spectrum disorder. Defense Exhibit D-1 at 13 (stating, Appellant "does meet the criteria for [an] autism spectrum [disorder, specifically] what was previously referred to in the diagnostic nomenclature as Asperger syndrome").

[12] Although Dr. Dattilo acknowledged that voyeuristic disorder can be a lifelong condition, *see* Defense Exhibit D-1 at 18, he stated that Appellant's cooperation with police and his remorse for his actions were "major steppingstone[s] towards **his complete rehabilitation**." Defense Exhibit D-1 at 20. This statement suggests that Appellant can be cured, or fully rehabilitated, of his voyeuristic disorder.

expectation of privacy that Appellant invaded. Dr. Mapes, who's assessment report the trial court found to be credible, opined to a reasonable degree of professional certainty that Appellant met all the criteria for classification as a SVP under Pennsylvania law and, in particular, that Appellant was likely to commit future predatory sexually violent offenses as a result of his voyeuristic disorder. As such, Appellant's sufficiency claim is without merit.[13]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/10/2021

---

[13] [A Sexual Offenses Assessment Board] report or opinion that [an] individual has an abnormality indicating the likelihood of predatory sexually violent offenses[, such as Dr. Mapes's assessment report of Appellant,] is itself evidence. [W]hile a defendant is surely entitled to challenge such evidence by contesting its credibility or reliability before the SVP court, such efforts affect the weight, not the sufficiency of the Commonwealth's case. Accordingly, they do not affect our sufficiency analysis.

*Feucht*, 955 A.2d at 982 (citations omitted).